IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **Case No. 2:26-cr-00011** |
| Plaintiff, | : | |
| | : | **Judge Algenon L. Marbley** |
| v. | : | |
| | : | |
| BRENDAN CONKLIN, | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter comes before the Court on Defendant Brendan Conklin's Motion to Require *In Camera* Review of Grand Jury Transcripts. (ECF No. 33).  For the following reasons, Defendant's Motion is **DENIED**.

### I.    BACKGROUND

In 2023, Brendan Conklin formed an entity called the "Ohio Fugitive Apprehension Program," (ECF No. 31 at 8), which he characterized as being a "bail recovery" business "lawfully formed under Ohio law in 2023."  (ECF No. 33 at 2).[1]  On December 14, 2023, Mr. Conklin is alleged to have falsely impersonated a federal officer while he was detaining, arresting, and searching a person—his victim—after he initiated a traffic stop of her vehicle.  (*Id.*; ECF Nos. 31 at 8; 1 at 1).  According to the Government, Mr. Conklin ordered his victim out of her car at gunpoint, conducted a search of her person, and then "locked her in the rear of his caged vehicle while then attempting (and failing) to obtain the assistance of legitimate law enforcement" to take her into custody.  (ECF No. 31 at 8).  While Mr. Conklin was locking the victim into the backseat

---

[1] In his Motion, Defendant Conklin refers to the Government's prior briefing "for a description of the alleged encounter," (ECF No. 33 at 2), and the Court relies on the Government's allegations therein to provide factual background.

1

of his vehicle, he inadvertently locked himself out of the car, and law enforcement then arrived to assist him. (ECF Nos. 31 at 8; 33-2). Conklin's victim had previously missed a municipal court date for traffic citations. (ECF No. 31 at 8).

In January 2026, a grand jury charged Conklin with two counts: falsely impersonating an officer or employee of the United States in violation of 18 U.S.C. § 912, and arresting and searching the victim—while falsely impersonating an officer or employee of the United States— in violation of 18 U.S.C. § 913. (ECF No. 1 at 1). Conklin moved to dismiss the second count of the Indictment, arguing that it was impermissibly "multiplicitous." (ECF No. 19 at 1–3). Thereafter, the Government filed a Superseding Indictment on April 2. (ECF No. 25). Conklin then moved for a Bill of Particulars. (ECF No. 27). The Court denied both of Conklin's motions. *United States v. Conklin*, 2026 WL 1029693, at *3–4 (S.D. Ohio Apr. 16, 2026) (Marbley, J.).

Meanwhile, on April 7, 2026, Conklin filed the instant Motion seeking *in camera* review of grand jury transcripts relating to the Superseding Indictment. (ECF No. 33 at 1). On April 14, the Government opposed the Motion. (ECF No. 42). The Court's Scheduling Order prohibits reply briefs absent leave, (*see* ECF Nos. 11 at 2; 29 at 2), and so this matter is ripe for review.

## II.    LAW & ANALYSIS

Federal Rule of Criminal Procedure 6 governs federal grand juries. It requires that all grand jury proceedings, except deliberations and voting, "be recorded by a court reporter or by a suitable recording device." Fed. R. Crim. P. 6(e)(1). These proceedings are generally kept secret. *See* Fed. R. Crim. P. 6(e)(2). This secrecy is a "long-established" tradition in federal courts, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958), given the understanding that "the proper functioning of [the] grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979).

There are certain circumstances, however, where disclosure of grand jury proceedings may be appropriate.  Rule 6 provides for such disclosure through Court authorization, noting that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter" under certain circumstances, including, as relevant here, "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  Because an inquiry into the sufficiency of a grand jury proceeding alleges a defect in the commencement of the prosecution, a defendant must make such a request prior to trial.  Fed. R. Crim. P. 12(b)(3)(A)(v).

A defendant seeking to pierce the secrecy of grand jury proceedings must show, with particularity, that "there is a compelling necessity" for doing so.  *Procter & Gamble Co.*, 356 U.S. at 682; *see Douglas Oil*, 441 U.S. at 221.  This is a "heavy burden."  *United States v. Cook*, 2019 WL 2067142, at *3 (S.D. Ohio May 10, 2019) (Sargus, J.) (denying motion to produce grand jury transcripts); *accord United States v. Arrick*, 2018 WL 8344588, at *1 (6th Cir. Nov. 28, 2018).  The defendant must show that:  (1) "the material they seek is needed to avoid a possible injustice in another judicial proceeding"; (2) "the need for disclosure is greater than the need for continued secrecy"; and (3) "their request is structured to cover only material so needed."  *Douglas Oil*, 441 U.S. at 222.

The Supreme Court has repeatedly emphasized the important interests that are safeguarded by maintaining grand jury confidentiality:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony.  Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements.  There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.  Finally, by preserving the secrecy of the

3

proceedings, [courts] assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Id.* at 219. Moreover, disclosure of grand jury testimony, even where the grand jury has concluded its service, may have consequences on the functioning of future grand juries. Thus, the same showing is required even when the grand jury proceedings have concluded, because courts "must consider" the possible impacts that disclosure would have on future grand juries. *Id.* at 222. As the Supreme Court explained:

> Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. . . . Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

*Id.*; *see also Procter & Gamble Co.*, 356 U.S. at 682 ("The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow.").

Defendant Conklin requests that the grand jury transcripts surrounding the Superseding Indictment be made available for *in camera* review based on two arguments: (1) his "belief" that exculpatory facts and evidence were not presented to the grand jury, in violation of Department of Justice policy; and (2) his belief that the Government may have inaccurately instructed the grand jury regarding his speech rights and their interplay with the elements of the charged offenses. (ECF No. 33 at 3–5). Neither argument provides a basis for invading the secrecy of the grand jury, and courts routinely reject such requests for grand jury transcripts. *E.g.*, *United States v. Mohammad*, 2017 WL 1957481, at *3 (N.D. Ohio May 11, 2017) (Sargus, J., by designation).

First, Conklin challenges the sufficiency of the evidence supporting the grand jury indictment. (ECF No. 33 at 3–5). This challenge falls flat, because courts do not "review facially valid indictments on such grounds." *Mohammad*, 2017 WL 1957481, at *3. Criminal defendants

4

do *not* have the right to "challenge indictments on the ground that they are not supported by adequate or competent evidence," because such a rule would "run counter to the whole history of the grand jury institution," and yet "add nothing to the assurance of a fair trial." *Costello v. United States*, 350 U.S. 359, 363–64 (1956). The Supreme Court has repeatedly made clear that grand juries function as "accusatory" bodies, not "adjudicatory" ones. *United States v. Williams*, 504 U.S. 36, 51 (1992). For this reason, prosecutors are *not* required to "present exculpatory as well as inculpatory evidence." *Id.*; (ECF No. 42 at 3).

While Conklin also raises Department of Justice policy to suggest that exculpatory evidence had to be presented, that argument is unavailing. True, Department of Justice policy requires that prosecutors conducting grand jury proceedings "must present or otherwise disclose" substantial exculpatory evidence. (ECF No. 33 at 4 n.1 (quoting U.S. Dep't of Justice, *Justice Manual*, § 9-11.233 (2018)). And though Conklin correctly recites that part of the Department of Justice's policy, he omits the remainder, which clarifies that this requirement is a self-imposed one of prosecutorial ethics. Under the *Justice Manual*, a failure to follow Department policy may lead to an oversight inquiry, but it does not impact the indictment itself. *See* U.S. Dep't of Justice, *Justice Manual*, § 9-11.233 (2018) ("[A] failure to follow the Department's policy should not result in dismissal of an indictment."). It follows that if the prosecutors presenting the Superseding Indictment to the grand jury failed to present exculpatory evidence, the remedy would be referral of their actions for an inquiry. The remedy would not concern Conklin's case, because the *Justice Manual* "does not provide rights to third-parties which can be enforced in a civil or criminal proceeding." *United States v. Garcia-Guia*, 2009 WL 1324223, at *4 (S.D. Ohio May 12, 2009) (Rice, J.); *accord United States v. Myers*, 123 F.3d 350, 355–56 (6th Cir. 1997) (noting that the *Justice Manual* "does not, and may not be relied upon to create any rights, substantive or

procedural"), *cert. denied*, 522 U.S. 1020. For these reasons, Conklin's challenge to the sufficiency of the evidence presented to the grand jury fails.

Second, Conklin argues, on his belief, that the Government may have failed to advise the grand jury "that the mere recitation that [he] was a 'federal officer,' even if true, was protected speech unless accompanied by overt action on his part which caused [the victim] to follow a course of action [she] would not have otherwise taken." (ECF No. 33 at 5). Because the victim supposedly provided a statement "that [she] never believed that Mr. Conklin was a federal officer," Conklin argues that an essential element of the offense is refuted, and Due Process necessitated presentation of that statement before the grand jury. (*Id.*). Conklin's argument here fails, too.

To the extent that Conklin again argues that the prosecution was obligated to present exculpatory evidence to the grand jury, that is simply incorrect, as discussed above. The Government has no obligation to disclose exculpatory evidence to the grand jury. *Williams*, 504 U.S. at 51. And his suggestion that a review of the grand jury transcript is necessary to determine whether the grand jury was instructed on his rights to protected speech is similarly unavailing. Courts reject such requests when they are based on "mere speculation, devoid of any corroborating facts," because such speculation "does not outweigh the compelling need for grand jury secrecy." *Mohammad*, 2017 WL 1957481, at *3. Where a defendant fails to "identif[y] anything in the record that suggests that there were any irregularities in the grand jury proceedings," it is proper to deny disclosure of the grand jury proceedings, because "mere allegations of improper procedure without any facts supporting those allegations are not enough to demonstrate particularized need." *United States v. Demarey*, 1996 WL 145870, at *2 (6th Cir. Mar. 29, 1996). Indeed, neither a "generalized desire for discovery" nor "mere speculation" satisfy the particularized need requirement to disclose grand jury transcripts. *Heeter v. Bowers*, 2025 WL 511281, at *6 (S.D.

6

Ohio Feb. 17, 2025) (Marbley, J.).  Instead, the "typical showing" involves the attempt "to impeach a witness, refresh his recollection, to test his credibility and the like," given the necessity in those circumstances "to avoid misleading the trier of fact."  *Id.* (quoting *Douglas Oil*, 441 U.S. at 222 n.12).

Separately, Conklin's Motion also fails here because his request is not narrowly tailored to "cover[] only the material needed."  *Mohammad*, 2017 WL 1957481, at *3.  Conklin could have sought a more limited review of portions of the transcript related to the legal instruction for the elements of the charged offenses.  Instead, he asks for a review of the entirety of the grand jury transcripts surrounding the Superseding Indictment.  (ECF No. 33 at 5).  The breadth of this request further demonstrates that Conklin's Motion is really a fishing expedition challenging the sufficiency of evidence supporting the indictment at the expense of grand jury secrecy.  Courts do not permit such attempts to pry into the grand jury's proceedings.  *Mohammad*, 2017 WL 1957481, at *3; *United States v. Stone*, 2011 WL 4708783, at *5 (E.D. Mich. Oct. 6, 2011).

In sum, exculpatory evidence need not be presented to the grand jury, and Conklin cannot obtain grand jury transcript disclosure based on his speculative belief about how the grand jury was advised.  Conklin has not shown that the grand jury transcripts are necessary to avoid possible injustice, that the need for *in camera* review of those transcripts is greater than the need for their continued secrecy, or that his request is narrowly tailored only to cover necessary material. Conklin's Motion fails to surmount the high standard necessary to disclose grand jury transcripts— or even to subject them to *in camera* review.  *See Stone*, 2011 WL 4708783, at *5.  Although Conklin points to what he views as exculpatory evidence, (*e.g.*, Summary of Victim Interview, ECF No. 33-1 at 2–3), the possible failure of the Government to present exculpatory evidence does not mandate *in camera* review of grand jury transcripts to determine whether the grand jury was

7

properly advised.  The grand jury "is an institution separate from the courts, over whose functioning the courts do not preside," and "its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length."  *Williams*, 504 U.S. at 47.  For this reason, federal courts refuse "many requests to exercise supervision over the grand jury's evidence-taking process," including by rejecting the invitation to require prosecutors to present exculpatory evidence to grand juries.  *Id.* at 50–51; *see generally In re Kittle*, 180 F. 946, 947 (S.D.N.Y. 1910) (Hand, J.) (The grand jury functions as "an irresponsible utterance of the community at large, answerable only to the general body of citizens, from whom they come at random, and with whom they are again at once merged.  A court shows no punctilious respect for the Constitution in regulating their conduct.").

The Court does not minimize the ever-present possibility that a grand jury will err, or that the grand jury process could be abused.  Certainly, there is always the troubling possibility that a criminal defendant "may suffer the collateral consequences of an indictment that is unfounded," perhaps best exemplified by the legendary adage that the grand jury "would indict a ham sandwich if asked to do so by the prosecutor."  *United States v. Laurent*, 861 F. Supp. 2d 71, 89–90 (E.D.N.Y. 2011) (Weinstein, J.) (cleaned up); *see Miller v. Brunsman*, 599 F.3d 517, 527 (6th Cir. 2010) (Martin, Jr., J., concurring) ("[T]he modern grand jury is not exactly a robust check on prosecutorial discretion.").  Nevertheless, the Court declines to conduct an *in camera* review of grand jury instructions because such a review "would serve no useful purpose" in this case.  *United States v. Graham*, 247 F. Supp. 2d 923, 925 (S.D. Ohio 2002) (Rice, J.).  Proceedings before a grand jury "enjoy a presumption of regularity," and a trial before a petit jury will afford Conklin a "full and fair opportunity" to present his evidence and arguments.  *United States v. Wahib*, 578 F. Supp. 3d 951, 961 (N.D. Ohio 2022) (Calabrese, J.).

### III.    CONCLUSION

For the foregoing reasons, Defendant Conklin's Motion to Require *In Camera* Review of

Grand Jury Transcripts (ECF No. 33) is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  April 20, 2026**

9