IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,      :

     :    **Case No. 2:26-cr-00011**

       **Plaintiff,**     :

     :    **Judge Algenon L. Marbley**

    **v.**      :

     :

**BRENDAN CONKLIN,**      :

     :

       **Defendant.**     :

## OPINION & ORDER

This matter comes before the Court on the parties' Motions *in Limine*. (ECF Nos. 38; 39; 45).  For the following reasons, Defendant Conklin's Motions *in Limine* are **DENIED**, and the Government's Motions *in Limine* are **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

In 2023, Brendan Conklin formed an entity called the "Ohio Fugitive Apprehension Program," (ECF No. 31 at 8), characterized as being a "bail recovery" business "formed under Ohio law in 2023."  (ECF No. 33 at 2).[1]  On December 14, 2023, Mr. Conklin allegedly impersonated a federal officer while he was detaining, arresting, and searching a person after he initiated a traffic stop of her vehicle.  (*Id.*; ECF Nos. 31 at 8; 1 at 1).  According to the Government, Mr. Conklin ordered his victim out of her car at gunpoint, conducted a search of her person, and then "locked her in the rear of his caged vehicle while then attempting (and failing) to obtain the assistance of legitimate law enforcement" to take her into custody.  (ECF No. 31 at 8).  While Mr. Conklin was locking the victim into the backseat of his vehicle, he inadvertently locked himself

---

[1] In his Motion, Defendant Conklin refers to the Government's prior briefing "for a description of the alleged encounter," (ECF No. 33 at 2), and the Court relies on the Government's allegations therein to provide factual background.

out of that vehicle, and law enforcement then arrived to assist him.  (ECF Nos. 31 at 8; 33-2). Conklin's victim had previously missed a municipal court date for traffic citations.  (ECF No. 31 at 8).

In January 2026, a grand jury charged Conklin with two counts:  falsely impersonating an officer or employee of the United States in violation of 18 U.S.C. § 912, and arresting and searching the victim—while falsely impersonating an officer or employee of the United States— in violation of 18 U.S.C. § 913.  (ECF No. 1 at 1).  Conklin moved to dismiss the second count of the Indictment, arguing that it was impermissibly "multiplicitous."  (ECF No. 19 at 1–3).  On April 2, 2026, the Government filed a Superseding Indictment.  (ECF No. 25).  Conklin then moved for a Bill of Particulars.  (ECF No. 27).  The Court denied both of Conklin's motions.  *United States v. Conklin*, 2026 WL 1029693, at *3–4 (S.D. Ohio Apr. 16, 2026) (Marbley, J.).

In advance of trial, the parties filed Motions *in Limine*, (ECF Nos. 38–39; 45), and submitted responses thereto.  (ECF Nos. 48–50).  The Court's Scheduling Order prohibits reply briefs absent leave, (*see* ECF Nos. 11 at 2; 29 at 2), so these motions are ripe for review.

## II.    STANDARD OF REVIEW

### A.  Motions *in Limine*

The purpose of a motion *in limine* is "to narrow the issues remaining for trial and to minimize disruptions at trial."  *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). Whether to grant a motion *in limine* falls within the sound discretion of the trial court.  *Delay v. Rosenthal Collins Grp., LLC*, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)).  The guiding principle is "to ensure evenhanded and expeditious management of trials."  *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

2

Courts "should exclude evidence on a motion in *limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay*, 2012 WL 5878873, at *2 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). The burden rests on the movant. *Morrison v. Stephenson*, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Furthermore, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison*, 2008 WL 343176, at *1 ("Courts . . . are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence." (internal quotation marks omitted)).

Rulings on motions *in limine* are "no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Thus, the Court "may change its ruling at trial for whatever reasons it deems appropriate." *Id.*

### B.  Applicable Rules of Evidence

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citations omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant." *Id.* at 401.

3

Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Fed. R. Evid. 401 Advisory Committee's Notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Generally, hearsay is inadmissible, unless an exception to the hearsay rule applies. *See* Fed. R. Evid. 801, 802. Evidence that would constitute hearsay for one use may be considered excluded from the definition of hearsay altogether in other instances. For example, a statement by a party opponent is considered "not hearsay," but that same statement offered by the party that made the statement fits squarely within the general prohibition. *See* Fed. R. Evid. 801(c), (d).

Additionally, relevant evidence of character, character trait, or other acts is likewise inadmissible under Rule 404 "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Finally, Rule 405 permits the introduction of certain character evidence through limited means, in special circumstances. Fed. R. Evid. 405(a), 405(b). Typically, "when evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). Where a relevant character trait is at issue—"when a person's character or character trait is an essential element of

a charge, claim, or defense"—specific instances of relevant conduct may be introduced.  Fed. R. Evid. 405(b).  It is within this framework that this Court considers the parties' Motions.

### III.   LAW & ANALYSIS

Conklin filed two Motions *in Limine*, seeking disclosure of *Brady*, *Giglio*, and Jencks Act material, and the use of other acts evidence of the victim under Rule 404(b).  (ECF Nos. 38; 39). The Government's Motion *in Limine* contains several discrete motions.  (*See* ECF No. 45).  First, the Government also seeks to admit other acts evidence—in this case, of Conklin.   The Government also requests the presence of a police detective at trial and seeks to prohibit certain evidence and argument that Conklin might attempt to introduce.  The Court analyzes each request in turn.

### A.  Defendant's Motion for Timely Disclosure of *Brady*/*Giglio* and Jencks Material

### (ECF No. 38)

Defendant Conklin first moves for an Order directing the Government to disclose broad swaths of evidence and material.  Specifically, he seeks the disclosure—by April 20, 2026—of exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), impeachment material under *Giglio v. United States*, 405 U.S. 150 (1972), accelerated production of Jencks Act material under 18 U.S.C. § 3500, and witness statements under Federal Rule of Criminal Procedure 26.2.  (ECF No. 38 at 1).  He points to his earlier Motion to Require *In Camera* Review of Grand Jury Transcripts and its Supplement as identifying *Brady* and *Giglio* evidence, hypothesizing that "immediate disclosure of grand jury transcripts will produce additional *Brady*/*Giglio* and Jencks evidence critical to the defense in trial preparation."  (*Id.* at 3; *see* ECF Nos. 33; 36).

The Government opposes Conklin's request, representing that it has been complying with its discovery obligations and Conklin has already received "a vast majority of the evidence" in the

case.  (ECF No. 50 at 1).  It further represents that although a majority of the "Jencks eligible evidence" has already been provided to defense counsel, any remaining Jencks materials will be provided by April 30, 2026, pointing out that this approach is consistent with the Court's practice. (*Id.* at 1–2).  The Court previously granted the Government's unopposed request for a protective order governing discovery and disclosures.  (*See* ECF No. 14).

Two threshold issues can be disposed of swiftly, based on the procedural posture of Conklin's request.  First, Defendant Conklin's request for disclosure by April 20, 2026 was unworkable and, at any rate, moot.  Prior to making this motion, Conklin requested and received an extension of the pretrial deadlines that extended the Government's response deadline to April 20.  (ECF Nos. 35; 37).  Were the Court inclined to grant Conklin's requested relief, it still would not order such relief without due consideration of the Government's position, should the Government indicate—as it has—that it is opposed to Conklin's motion.

Second, the Court has denied Conklin's motion requesting *in camera* review of grand jury transcripts.  In doing so, the Court determined that Conklin had failed to show a particularized need for disclosure or a review of those transcripts based on his speculative theory that exculpatory evidence was not presented to the grand jury, because the Government has no obligation to disclose exculpatory evidence when presenting the case to the grand jury.  *United States v. Conklin*, 2026 WL 1075065, at *3 (S.D. Ohio Apr. 20, 2026) (Marbley, J.); (ECF No. 47 at 6–7).  Now, Conklin advances a confusing and seemingly contradictory argument that those grand jury transcripts may themselves constitute or contain exculpatory evidence, (ECF No. 38 at 3; *see* ECF No. 35 at 3), despite his prior position that he believed the Government had *failed* to present exculpatory evidence to the grand jury.  Even setting aside this apparent contradiction, Conklin's argument fails.  The Court has determined that he failed to show a particularized need for the review of the

grand jury transcripts.  *Conklin*, 2026 WL 1075065, at *3; (ECF No. 47 at 6–7).  And general claims "that disclosure of grand jury transcripts would reveal exculpatory evidence [are] not sufficient to satisfy the requirement of a showing of particularized need."  *United States v. Smith*, 2024 WL 3949059, at *2 (6th Cir. May 22, 2024) (quoting *United States v. Short*, 671 F.2d 178, 184 (6th Cir. 1982)); *see, e.g.*, *United States v. Ferguson*, 844 F. Supp. 2d 810, 829 (E.D. Mich. 2012) (finding "general statements" that a defendant needed grand jury testimony "to prepare for trial and for possible impeachment" insufficient to demonstrate a particularized need for disclosure).

Thus, to the extent that Conklin had sought immediate disclosure of material by April 20, and to the extent that he once again seeks disclosure or review of grand jury transcripts, his request falls flat.  But Conklin's motion also requests other *Brady*, *Giglio*, and Jencks material, including information regarding any prior felony convictions or other disciplinary actions of Government witnesses, other expected exculpatory or impeachment evidence, and any outstanding Jencks material.  (ECF No. 38 at 3).  The Court considers these remaining issues, turning to several rules and principles of criminal procedure that are instructive.

The Government is under a general obligation to disclose exculpatory material.  Here, this means that the Government must provide Conklin with evidence it has that is favorable to him and material to guilt or punishment.  *Brady*, 405 U.S. at 87 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution.").  The Government must also disclose evidence that could serve to impeach the credibility of its witnesses "by showing bias or interest."  *United States v. Bagley*, 473 U.S. 667, 676–77 (1985) (rejecting constitutional distinction between impeachment evidence and exculpatory evidence); *Giglio*, 405

7

U.S. at 154–55 (finding "the jury was entitled to know of" evidence of any agreement between the Government and its witness regarding future prosecution of that witness, where "the Government's case depended almost entirely on [that witness's] testimony").  As the Sixth Circuit aptly summarized, *Bagley* and *Giglio* align with *Brady*'s overarching determination that "it is fundamentally unfair for the government to achieve a conviction through the concealment of evidence which undermines the strength of the government's case against the defendant." *United States v. Presser*, 844 F.2d 1275, 1282–83 (6th Cir. 1988).

Despite this significant obligation on the prosecution, however, the Government "typically is the sole judge of what evidence in its possession is subject to disclosure." *Id.* at 1281.  "Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  Thus, absent an indication of misconduct, "the Court is entitled to rely on the Government's representations regarding whether evidence in its possession is subject to disclosure under *Brady* and *Giglio*" and their progeny. *United States v. Ledbetter*, 2015 WL 5954587, at *6 (S.D. Ohio Oct. 14, 2015) (Marbley, J.); *see, e.g.*, *United States v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000) ("[B]ecause prosecutors are officers of the court, district courts may take them at their word when they inform the court that they have reviewed specified . . . documents and that those documents do not contain material subject to compulsory disclosure under *Brady*."); *United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994) (district court entitled to accept Government representations regarding *Brady* material absent indication of misconduct).

Since the purpose of *Brady* disclosures is to safeguard the determination of the defendant's guilt or innocence, *Brady* does not focus on aiding the defendant's ability to prepare for trial. *See United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976).  The failure to disclose *Brady* material

8

becomes an issue only if that failure deprives the defendant of a fair trial, and neither *Brady* nor *Giglio* "gives the defense a general right to pre-trial discovery of evidence impeaching defense witnesses, where the prosecution denies that any such material is exculpatory and material under *Brady*." *Presser*, 844 F.2d at 1282–83.

Additionally, where potentially exculpatory evidence falls "within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence." *Presser*, 844 F.2d at 1283. The Jencks Act,[2] 18 U.S.C. § 3500, governs the timing of Government disclosures for certain types of material that a defendant might seek. *See United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994); *see also* Fed. R. Crim. P. 26.2. The Jencks Act provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). A statement can be written, recorded or transcribed if contemporaneous and substantially verbatim, or made to a grand jury. 18 U.S.C. § 3500(f). After a non-defendant witness testifies, the Court must order production of statements related to the testimony from the Government if the Defendant makes such a request. 18 U.S.C. § 3500(b).

Here, the Government argues that it "has complied with and continues to comply with its on-going discovery obligations," including under the Jencks Act, *Brady*, *Giglio*, Federal Rules of Criminal Procedure 16 and 26.2, and applicable Local Rules and Orders of the Court. (ECF No. 50 at 1). The Government represents that it has produced extensive discovery, and that it will provide "[a]ny outstanding remaining Jencks materials" to Conklin by April 30, 2026. (*Id.* at 1–2). It characterizes any remaining Jencks Act materials as primarily constituting a video interview

---

[2] The Jencks Act derives its name from *Jencks v. United States*, 353 U.S. 657 (1957).

that is "neither lengthy or voluminous," noting that Conklin's counsel already received a detective's summary of the interview and apparently had obtained the video through other means. (*Id.* at 2 & 2 n.1).

The Court has no reason to believe that there has been any instance of prosecutorial misconduct in this case.  Based on the Government's representations, the Court will not order the Government to turn over *Brady* or *Giglio* material and finds Conklin's motion moot to the extent that makes such a request.  *See Ledbetter*, 2015 WL 5954587, at *6; *see generally United States v. Happ*, 2008 WL 5101214, at *4 (S.D. Ohio Nov. 25, 2008) (Marbley, J.) (relying on prosecutor representations regarding the disclosure of evidence within the Government's possession).

Additionally, though the Government "technically . . . may withhold Jencks Act material until the conclusion of the direct examination of the witness, the better practice" sees the Government producing Jencks Act material "well in advance of trial so that defense counsel may have an adequate opportunity to examine that which is not in dispute and the court may examine the rest *in camera*, usually in chambers."  *United States v. Minsky*, 963 F.2d 870, 876 (6th Cir. 1992).  The pragmatic interest in providing the defense with time to review Jencks Act material prior to trial is influenced by the substance of the material to be disclosed.  *Compare United States v. Musgrave*, 2012 WL 3686496, at *2 (S.D. Ohio Aug. 27, 2012) (Black, J.) (disclosing material day prior to anticipated testimony of relevant witness), *with Ledbetter*, 2015 WL 5954587, at *6 (disclosing material multiple weeks before trial).  The more "voluminous" or "highly technical" the material, the earlier that production may be warranted.  *Musgrave*, 2012 WL 3686496, at *2.

Again, the Court accepts the representation of the prosecutors that any remaining undisclosed Jencks Act material is not substantial, and that disclosure on April 30 would not result

10

in any delay of the trial.  (*See* ECF No. 50 at 2).[3]  To the extent that Conklin seeks earlier disclosure of Jencks Act material, his motion must be denied as the Court cannot compel the Government to disclose this material prior to trial.  *E.g.*, *United States v. Abdi*, 498 F. Supp. 2d 1048, 1075 (S.D. Ohio 2007) (Marbley, J.) (denying motion to compel discovery regarding a Government witness prior to the witness testifying); *United States v. Jacobs*, 2022 WL 1624609, at *1–2 (S.D. Ohio May 23, 2022) (Marbley, J.) (same); *see generally Presser*, 844 F.2d at 1283.

Thus, Conklin's Motion *in Limine* is **DENIED** as moot insofar as it seeks disclosure of *Brady* and *Giglio* material; it is **DENIED** insofar as it seeks Jencks Act material prior to April 30, 2026.  The Government has represented that it will provide such Jencks Act material by that date, and this is sufficient.  To the extent that the Government determines that witness safety could be jeopardized by earlier disclosure, it may notify the Court and be excused from making such disclosures prior to the witness's testimony.

**B.  Defendant's Motion for Use of Other Acts Evidence Under Fed. R. Evid. 404(b)**

**(ECF No. 39)**

Next, Defendant Conklin moves for the admission of other acts evidence of the victim pursuant to Federal Rule of Evidence 404(b), arguing that three facts influenced the victim's state of mind at the time she encountered Conklin on December 14, 2023:  (1) that she was serving a 36-month period of community control in the Franklin County Court of Common Pleas; (2) that one of the conditions of her community control was that she remain free of new charges or convictions; and (3) that at the time she was stopped, the victim had two bench warrants for failure

---

[3] Should the Government determine that it possesses Jencks Act materials that are significant in volume or technically complex, the Government shall promptly alert the Court.  *See Musgrave*, 2012 WL 3686496, at *2.  Although the Court cannot compel Jencks Act disclosures prior to trial, it encourages the Government to provide Jencks Act material "as soon as possible to avoid delay at trial."  *Happ*, 2008 WL 5101214, at *5.

11

to appear for municipal court traffic violations.  (ECF No. 39 at 1–2).  Conklin argues that these facts explain the victim's state of mind at the time he detained her, and indicate that the victim "submitted to [his] authority as a State of Ohio bail or fugitive recovery agent on the existing state arrest warrants," not because of any alleged representation that he was a federal officer.  (*Id.* at 2–3).

The Government counters that Federal Rule of Evidence 609, not Rule 404(b), governs when a witness's criminal history can be admitted.  (ECF No. 48 at 1).  The Government points out that Conklin does not cite to Rule 609 or apply its analysis, and his motion fails for this reason.  (*Id.*).  Moreover, the Government says, Conklin's request is improper because the victim's state of mind is not an element of 18 U.S.C. §§ 912 or 913, and at any rate evidence regarding the victim's criminal history would risk confusion or otherwise mislead the jury and should be excluded under Rule 403.  (*Id.* at 1; *see id.* at 2–3).

Rules 609 and 404(b) apply in different circumstances.  Rule 609 "addresses only the ability of a party to impeach a witness through the introduction of prior convictions, specifically for the purpose of attacking credibility." *United States v. Lucas*, 357 F.3d 599, 607 (6th Cir. 2004).  It provides specific procedures for how a party may "attack[] a witness's character for truthfulness by evidence of a criminal conviction."  Fed. R. Evid. 609(a).  By contrast, Rule 404(b) governs instances where evidence of crimes, wrongs, or acts "may be admissible" for purposes other than proving a person's character, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Although Rule 404(b) normally is invoked when the Government seeks to introduce evidence about the *defendant's* other crimes, wrongs, or acts, it is not limited to such circumstances.  The Sixth Circuit has recognized "reverse" 404(b) evidence as a type of Rule

12

404(b) evidence.  "Reverse" 404(b) evidence is "evidence of a prior act by another offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." *Lucas*, 357 F.3d at 605; *cf. Huddleston v. United States*, 485 U.S. 681, 685–86 (1988) (suggesting that Rule 404(b) is not limited to the defendant).  Because Rule 404(b) speaks in broad terms regarding "a *person's* character," Fed. R. Evid. 404(b)(1) (emphasis added), it is not restricted to the evidence regarding the defendant.  Thus, the Sixth Circuit has held that "the standard analysis of Rule 404(b) evidence should generally apply in cases where such evidence is used with respect to an absent third party, not charged with any crime." *Lucas*, 357 F.3d at 605–06.  Although the *Lucas* case involved a third party who was absent and removed from the case, a defendant may also offer reverse 404(b) evidence of the victim's past acts, including to show knowledge or state of mind.  *See United States v. Clark*, 377 F. App'x 451, 458–59 (6th Cir. 2010).

So, the Government is incorrect in its argument that Conklin *must* rely on Rule 609 to introduce evidence of the victim's prior criminal history, because such evidence can be admitted under Rule 404(b).  *Cf. United States v. Montelongo*, 420 F.3d 1169, 1175 (10th Cir. 2005) (distinguishing attacks on witness credibility under Rule 608(b) from attempts to negate the defendant's guilt for the crime charged by establishing an aspect of the witness's knowledge under Rule 404(b)).  The Court turns to the three-part test that district courts in the Sixth Circuit use to determine the admissibility of Rule 404(b)(2) evidence.  The proffered evidence may be admitted if:  (1) there is sufficient evidence that a crime, wrong, or other act took place; (2) the evidence of that conduct is offered for a "proper purpose" in that it is "probative of a material issue other than character"; and (3) the evidence's probative value outweighs any risk of unfair prejudice.  *United States v. Barnes*, 822 F.3d 914, 920 (6th Cir. 2016).

***Sufficient Evidence.*** First, there must be sufficient evidence that a crime, wrong, or other act took place. The proponent seeking to admit evidence of a person's crimes, wrongs, or other acts under Rule 404(b) need "not prove by a preponderance of the evidence that a prior bad act occurred," *United States v. Mack*, 729 F. App'x 594, 602 (6th Cir. 2013), but may not rest on "unsubstantiated innuendo," as such evidence is only relevant "if the jury can reasonably conclude that the act occurred and the [person] was the actor." *Huddleston*, 485 U.S. at 689. Conklin argues that there is "ample evidence" of the three facts he seeks to admit regarding the victim's criminal history. (ECF No. 39 at 3). He proffers evidence of those first two facts, though he does not proffer evidence in support of the third fact. (*See* ECF No. 43). Because the other elements of this test are dispositive, the Court assumes for the sake of argument that the victim's crimes, wrongs, or other acts forming the basis of the three proffered facts occurred: the victim was serving a 36-month period of community control in December 2023, one condition was that the victim not obtain new charges or convictions, and when the victim was stopped, she had two bench warrants for failing to appear for cases involving traffic violations. *See United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008).

***Proper Purpose.*** Second, the evidence of the crime, wrong, or act must be offered for a proper purpose, meaning that it is probative of a material issue other than character. *Id.*; *see* Fed. R. Evid. 404(b)(1). The Sixth Circuit has established a tripartite inquiry to evaluate proper purpose. Evidence is offered for a proper purpose if: (1) it is "offered for an admissible purpose"; (2) the purpose for which it is offered "is material or 'in issue,'"; and (3) "the evidence is probative with regard to the purpose for which it is offered." *Bell*, 516 F.3d at 441–42; *accord Barnes*, 822 F.3d at 921. Conklin argues that the evidence is admissible to show that when the victim was detained, she "submitted to Mr. Conklin's authority as a State of Ohio bail or fugitive recovery

14

agent on the existing state arrest warrants rather than that of his alleged representations that he was a 'federal officer.'" (ECF No. 39 at 2). But as the Government points out, "the subjective state of mind of the victim is not an element of the offense for either § 912 or § 913." (ECF No. 48 at 2).

This second part of the test is where Conklin's request fails. Evidence of the victim's prior criminal history is not offered for a proper purpose here, nor is it material or probative. The "'purpose in introducing the evidence must be to prove a fact that the [other party] has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.'" *Bell*, 516 F.3d at 442 (quoting *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996)). But this case "[does] not present an issue of" the victim's knowledge of her own prior criminal history. *See id.*; *Merriweather*, 78 F.3d at 1077 (finding knowledge not at issue). The criminal statute Mr. Conklin is charged under has no element requiring certain knowledge for the alleged victim. *Newman v. United States*, 212 F.2d 450, 451 (6th Cir. 1954) (en banc) (addressing the elements of both 18 U.S.C. §§ 912 and 913; *see also United States v. Malik*, 2024 WL 1075070, at *2 (6th Cir. Mar. 12, 2024) (addressing the elements of 18 U.S.C. § 912). Thus, it is immaterial under either section whether or not the victim knew she was serving a period of community control, was subject to conditions to avoid new charges or convictions, or that she had two bench warrants for traffic cases. *See* 18 U.S.C. §§ 912, 913. Nor would the victim's knowledge matter under section 913 for a defendant who falsely impersonates a *federal* officer, even if that defendant might otherwise have some lawful *state* authority to arrest, detain, or search a person. *See* 18 U.S.C. § 913. Because there is no admissible purpose for the proffered evidence, it necessarily cannot be probative of anything in service of a non-existent purpose.

***Probative Value and Prejudicial Effect.*** Third, the evidence's probative value must outweigh any risk of unfair prejudice. *See Lucas*, 357 F.3d at 605. Because this is a conjunctive

test, and because the Court has determined that Conklin does not offer the evidence for a proper purpose, the Rule 404(b) analysis "need proceed no further." *Bell*, 516 F.3d at 444. Nevertheless, for the sake of completeness, the Court will also review this final requirement to put to rest any concern Conklin might have about the admissibility of this evidence. *See id.*

As a threshold matter, the evidence is not relevant, because it is not probative of any fact "of consequence" to determining the charges against Conklin. Fed. R. Evid. 401(b). But even if it were minimally relevant, otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Because there is no probative value to evidence of the victim's knowledge of her past offenses, the Court "must necessarily conclude that the Rule 403 balancing of probative value against the risk of unfair prejudice" tilts toward prejudice, and thus against admission. *See Mack*, 729 F.3d at 603. As a practical matter, because evidence that the victim was involved in unrelated crimes is not probative as to any elements of Conklin's offense, any value it may have is substantially outweighed by the real danger of prejudice by misleading or confusing the jury. *Cf. United States v. Noble*, 561 F. Supp. 3d 736, 739 n.1 (E.D. Mich. 2021) (reasoning that evidence of a minor victim's history of prostitution was barely probative to any element of the offense of sex trafficking, and thus was inadmissible).

The Sixth Circuit's reasoning in *Lucas* is illustrative. In *Lucas*, the defendant was arrested after being pulled over in her rental car for speeding. 357 F.3d at 603. The police discovered a substantial amount of cocaine and cash in the car, and the defendant was charged with knowingly possessing and intending to distribute the cocaine. *Id.* at 601, 603 Another individual (who was not a co-defendant or witness) had borrowed the rental car earlier in the day to get groceries; the

defendant's theory of the case was that this individual had stashed the drugs in the rental car. *Id.* at 602–03. The defendant tried to introduce evidence of that individual's prior conviction for possessing and distributing cocaine, but the district court prohibited that evidence as irrelevant. *Id.* at 604–05. The Sixth Circuit concluded that the evidence of that individual's prior conviction could be admissible as reverse 404(b) evidence, but was "minimally relevant," ultimately finding that the district court did not abuse its discretion in determining that the probative value of introducing evidence of a third party's prior drug conviction was outweighed by the prejudicial impact that the introduction would have on a fair trial, because the jury could have easily laid the blame on the third party. *Id.* at 605–06.

While the borrower of the rental car in *Lucas*'s prior conviction might have been minimally relevant, here the victim's prior criminal history is irrelevant to the offenses that are charged against Conklin. *See generally United States v. West*, 2009 WL 2026322, at *8 (E.D. Mich. July 8, 2009) (Reverse 404(b) evidence "is less important when there is no defense evidence negating the Government's evidence tying [the defendant] to the crime."). Moreover, even if the victim's prior criminal history had some relevance, it would be unduly prejudicial because it would likely confuse the issues, mislead the jury, and possibly prejudice the jury against the victim, when the material issues relate to Conklin's actions. *Cf. United States v. Price*, 2025 WL 33448, at *4 (S.D. Ohio Jan. 6, 2025) (raising concern that reverse 404(b) evidence regarding victims could "confuse . . . the jury and could distract them"). Accordingly, this Conklin Motion *in Limine* is **DENIED**.

### C. Government's Motion to Admit Defendant's Internet Search History and Statements (ECF No. 45)

The Government seeks to introduce evidence of Conklin's internet searches—conducted before and after his alleged actions on December 14, 2023—his statements made to a hardware

store employee on January 10, 2024, and his statements made to Westerville Police in January and February 2024 during and following a subsequent traffic stop he initiated on January 21, 2024. (ECF No. 45 at 2–3).  The Government argues that such evidence must be introduced to show that Conklin's actions on December 14, 2023 were knowing.  (*Id.*).  In the alternative, the Government argues that such evidence should be admissible under Rule 404(b).  (*Id.* at 9–14).

Conklin's statements and internet searches made in January and February 2024 occurred after the incident for which he is charged.  Therefore, the Court will consider them under Rule 404(b)'s rubric for other crimes, wrongs and acts.[4]  Most of Conklin's internet searches, however, occurred on or before December 14, 2023.  Thus, the Court will evaluate their relevance and prejudice under Rules 401 and 403, and first consider Conklin's challenges in that regard.

### 1.  Internet Searches

The Government proffers 17 discrete internet searches that Conklin made:

- "police badge design" (Feb. 1, 2023)
- "howbto [sic] determine if a us marshal is legit" (Feb. 19, 2023)
- "police car lights" (Apr. 9, 2023)
- "used police suv with lights for sale" (Apr. 9, 2023)
- "used police cars for sale" (Apr. 13, 2023)
- "us marshals fugitive task force badge" (Apr. 15, 2023)
- "sheriff gear setup" (Apr. 15, 2023)

---

[4] The Government's argument that Conklin's conduct at the hardware store (or at a subsequent traffic stop) would not bear adversely on the jury's judgment of his character, (ECF No. 45 at 9), is unconvincing.  The Government has alleged that Conklin called himself a "federal officer" at the hardware store, and presented Westerville police with credentials suggesting that he was a "United States Bail and Fugitive Enforcement Recovery Agent."  (*Id.* at 9, 12).  Certainly, this is sufficiently "conduct of the defendant which *may* bear adversely on the jury's judgment of his character."  *United States v. Cooper*, 577 F.2d 1079, 1087–88 (6th Cir. 1978) (emphasis added).  Such evidence is not admissible to prove a person's character or show that person may have acted in accordance with that character, because it "generaliz[es] a defendant's [other] bad act[s] into bad character," and invites the fact-finder to "rais[e] the odds that he did the . . . bad act now charged (or, worse, call[] for preventative conviction even if he should happen to be innocent momentarily)."  *Old Chief v. United States*, 519 U.S. 172, 181–82 (1997).  It may be admissible for another use under Rule 404(b)(2).

18

- "fake federal license plate" (May 7, 2023)
- "how to qualify as emergency vehicle" (July 20, 2023)
- "Ohio Code 2913.42 – Tampering with records" (July 20, 2023)
- "state of ohio public owned registration" (July 20, 2023)
- "SWAT Police ID Card Custom with your PHOTO and LOGO or BADGE GRA . . ." (Dec. 9, 2023)
- "police id card" (Dec. 9, 2023)
- "recite order in – summons not authorized" (Dec. 14, 2023) (multiple times)
- "police haircut" (Jan. 3, 2024)
- "369 police meaning" (Jan. 9, 2024)
- "369 police code" (Jan. 9, 2024)

(*Id.* at 3–4). Conklin does not oppose the admission of his searches related to the Ohio Revised Code, the United States Marshals, or the multiple searches on December 14, 2023, conceding that these searches are arguably relevant. (ECF No. 49 at 4). Conklin does oppose the remainder, however, arguing that his searches regarding police equipment, police attire, and Ohio law issues related to his bail business is not evidence relevant to the charged offenses, and even if it is relevant, its value is substantially outweighed by the risks of unfair prejudice, confusing the issues, or misleading the jury, given that he is not "on trial for being a 'wannabe cop.'" (*Id.* at 3–4).

The Court will admit the following internet searches:

- "howbto [sic] determine if a us marshal is legit" (Feb. 19, 2023)
- "us marshals fugitive task force badge" (Apr. 15, 2023)
- "fake federal license plate" (May 7, 2023)
- "Ohio Code 2913.42 – Tampering with records" (July 20, 2023)
- "recite order in – summons not authorized" (Dec. 14, 2023) (multiple times)

These five discrete searches are relevant, because they tend to make Conklin's knowledge regarding his alleged impersonation of a federal officer more or less probable, which is a fact of consequence. Fed. R. Evid. 401. Their relevance is not outweighed by any prejudicial effect, and thus they are admissible.

By contrast, the three last internet searches do not appear to be relevant, as they occurred after the event in question.  The Court concludes that they are inadmissible.  For the remaining nine searches, the Court will allow the Government to lay the foundation for their relevance.  As Conklin points out, he is not charged with impersonating a state trooper or municipal police officer.  (*See* ECF No. 49 at 4).  Nor is he charged with impersonating a county sheriff.  Thus, introducing evidence about his internet searches for police or sheriff equipment, police badge design, police haircuts, police codes, or vehicle registration appear immaterial to the charged counts.  But the Court notes that their relevance may become apparent should the Government establish a foundation for their admission.  Thus, any ruling on those searches is reserved and held in abeyance at this time.

### 2.  Statements Made After December 14, 2023

The Court turns to evaluate Conklin's statements made in January and February 2024.  Conklin argues that these statements are quintessential character and propensity evidence prohibited by Rule 404.  (ECF No. 49 at 5).  The Government suggests that even if this conduct falls under Rule 404, the acts are still admissible under Rule 404(b).  (ECF No. 45 at 9–15).

Conklin made statements to a hardware store clerk in January 2024 that he was a federal agent, and to Westerville police in January and February 2024 regarding a separate traffic stop that he initiated.  Again, the Court evaluates this Motion under the Sixth Circuit's three-part Rule 404(b) admissibility test, and may admit the proffered evidence if:  (1) there is sufficient evidence that a crime, wrong, or other act took place; (2) the evidence is offered for a proper purpose in that it is probative of a material issue other than character; and (3) the evidence's probative value outweighs any risk of unfair prejudice.  *Barnes*, 822 F.3d at 920.

***Sufficient Evidence.***  The first requirement is that there must be sufficient evidence that a crime, wrong, or other act took place.  The Government proffers that these actions were captured

on body-worn camera video—Conklin's in the instance of his hardware store comments, and the Westerville police's in the instance of his traffic stop.  (ECF No. 45 at 10, 13).  Conklin does not dispute that this evidence exists, (*see* ECF No. 49 at 5, 10), so this first requirement is satisfied.

***Proper Purpose.***  The second requirement is that evidence must be offered for a proper purpose, probative of a material issue other than character.  As discussed in greater detail *supra*, under the Sixth Circuit's tripartite inquiry to evaluate whether this proper purpose has been satisfied, the Court evaluates whether:  (1) the evidence is offered for an admissible purpose; (2) that purpose is material or in issue; and (3) the evidence is probative to the purpose.  *Bell*, 516 F.3d at 441–42.

The Government advances that this evidence is admissible to show Conklin's intent, knowledge, absence of mistake, and lack of accident.  Further, the Government argues that the evidence demonstrates Conklin's "plan and common scheme," whereby he identifies himself as a federal officer to civilians but is demure in the presence of actual law enforcement.  (ECF No. 45 at 10, 13).  Conklin counters that the Government is seeking to introduce quintessential character or propensity evidence forbidden under Rules 404(a), 404(b)(1), and 403.  (ECF No. 49 at 5–6, 9–10).  He argues that evidence of his actions or statements made following the December 14, 2023 incident cannot supply evidence for his intent, knowledge, absence of mistake, lack of accident, or plan regarding incidents that already occurred, and, that at any rate, any conceivable probative value offered by these incidents would be outweighed by their unfair prejudice by inviting the jury to consider Defendant's uncharged conduct.  (*Id.* at 5, 9).  Conklin asserts that his defense is simply that he did not represent himself as a federal officer to the victim, and thus he has not placed intent at issue.  (*Id.*).

Conklin's alleged arrest of the victim is the only incident for which he is charged. The Government's request to introduce evidence of Conklin's other acts in January and February 2024 fails because the evidence is not offered for a proper purpose. As a threshold matter, the Government appears to be introducing evidence of Conklin's character, or propensity to identify himself as, and "boast[] and act[]" as, a federal officer when he interacts with civilians. (ECF No. 45 at 13; *id.* at 9). Rule 404(a) prohibits this. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). The Government cannot introduce evidence of Conklin's actions in January or February 2024 to show that he acted in December 2023 "in accordance with the character" purportedly revealed by those later actions. Fed. R. Evid. 404(b)(1). Its request really seeks to use this evidence to insinuate that because Mr. Conklin dressed as, acted as, or held himself out to be a federal agent at other, later times, he was more likely to have done so in his interaction with the victim on December 14, 2023. "This is precisely the type of propensity character evidence that Rule 404(a) and Rule 404(b) seek to preclude." *Cannon v. Licking Cnty.*, 2019 WL 5543032, at *6 (S.D. Ohio Oct. 25, 2019) (Marbley, J.) (rejecting prior evidence proffered for causation and damages); *see also Old Chief v. United States*, 519 U.S. 172, 180–82 (1997) (explaining why propensity and character evidence is generally disallowed under Rule 404(b)). Conklin's later actions do not show his *earlier* intent or knowledge in his interaction with the victim, nor do they suffice to provide evidence of a plan or common scheme for his interactions *with that victim* (who is not involved in those later actions).

And Conklin indicates that he will not argue intent, or suggest that he made a mistake or accidentally held himself out to be a federal agent; rather, he proffers that his defense is he never represented that he was a federal officer to the victim. (ECF No. 49 at 5, 9). Because Rule 404(b)

22

permits the introduction of evidence of other crimes, wrongs, or acts to prove a fact that the other party places in issue, *see Bell*, 516 F.3d at 442, the Court will permit the Government to introduce evidence of Conklin's statements and actions at the hardware store and with Westerville police in January and February 2024 if the defense makes an issue of intent, or argues at trial that he mistakenly or accidentally represented himself to be a federal officer to the victim on December 14, 2023.  *See United States v. Schaffner*, 771 F.2d 149, 153 (6th Cir. 1985) (where intent could be inferred from charged crime and defendant did not assert a lack of intent, intent was not at issue); *see also United States v. Bonin*, 932 F.3d 523, 541 (7th Cir. 2019) (permitting other acts evidence at trial for impeachment purposes).[5]  Otherwise, Rule 404(b)(2)'s permitted uses simply do not apply to the proffered evidence.

Even assuming that the Government's request was not an impermissible attempt to introduce character or propensity evidence, its evidence still is not offered for a proper purpose— nor is it in issue or probative—because Conklin represents that he does not intend to place his intent in issue, (ECF No. 49 at 5, 9), and the proffered evidence concerns events that occurred in 2024, *after* the events that the Government has chosen to charge.  Defendant argues the proffered evidence, therefore, is not probative of Conklin's knowledge in December 2023.  True, knowledge is an element of the case.  *Malik*, 2024 WL 1075070, at *2; *cf. Newman*, 212 F.2d at 451 (invoking the statutory language, which involves pretending and "pretended character").  But so long as Conklin merely challenges whether he ever acted as a federal officer, and does make an issue of

---

[5] In *Bonin*, the district court originally excluded items seized from the defendant's home that showed that he posed as a law enforcement officer.  932 F.3d at 540–41.  At trial, however, the defendant "denied ever intending to give the impression that he was a U.S. Marshal . . . at any time in his life."  *Id.* at 541.  The district court determined that the defendant had "opened the door to the government's impeachment with evidence of pseudo federal law enforcement items from his house" to show his intent, and the Seventh Circuit affirmed.  *Id.*

23

his knowledge, then evidence of his other acts is not admissible to prove his knowledge. *See Bell*, 516 F.3d at 442; *Merriweather*, 78 F.3d at 1077. And so long as there is no admissible purpose for the proffered evidence—so long as Conklin's knowledge is not at issue—it is not probative of anything germane.

   ***Probative Value and Prejudicial Effect.*** Under the third requirement, the evidence's probative value must outweigh any risk of unfair prejudice. Again, this is a conjunctive test, and the Rule 404(b) analysis need not proceed to this issue. Unlike the proffered evidence of the victim's crimes, wrongs, and other acts, however, this evidence is relevant. It has a tendency to make facts of consequence—such as Conklin's knowledge—more or less probable. Fed. R. Evid. 401. Indeed, the Supreme Court has recognized that propensity evidence is certainly relevant, *Old Chief*, 519 U.S. at 180–81 (citing *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) (Breyer, J.)), as is character evidence. *Id.* at 181 (citing *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)). The real issue is whether this evidence would be unduly prejudicial to Mr. Conklin. Fed. R. Evid. 403. Given the possibility that this issue could arise at trial, the Court will decline to address it with the Motions *in Limine*, and reserve any determination on the possible prejudicial effect that this evidence may have if introduced should Conklin make his knowledge an issue, or otherwise be subject to impeachment.

   Thus, this Government Motion is **GRANTED** in part and **DENIED** in part. It is granted in part for the five above-identified internet searches; it is denied in part for the three internet searches that Conklin made in January 2024. For the remaining internet searches, the Government may attempt to lay a proper foundation to demonstrate their relevance. The Motion is otherwise denied with respect to the evidence of Mr. Conklin's statements made at the hardware store and to Westerville police in January and February 2024, though without prejudice to the Government's

later renewal of the request should Conklin open the door to the issues, or put his knowledge or intent at issue generally.

### D.  Government's Motion for Presence of Government Agent at Trial (ECF No. 45)

The Government also designates Westerville Division of Police Detective Colin Phillips "as its representative in this case to be present at counsel table throughout the trial, even though he will be a witness" in the case.  (ECF No. 45 at 1).  Generally, district courts "must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony" should a party request exclusion.  Fed. R. Evid. 615(a).  An exception exists for "one officer or employee of a party that is not a natural person, if that officer or employee has been designated as the party's representative by its attorney."  Fed. R. Evid. 615(a)(2).  Because Defendant Conklin does not oppose Detective Phillips' presence throughout the trial, (ECF No. 49 at 1), this Government Motion is **GRANTED**.

### E.  Government's Motion to Prohibit Defendant's Self-Serving Out-of-Court Statements (ECF No. 45)

The Government moves to prohibit Conklin from admitting his own out-of-court, self-serving exculpatory statements.  (ECF No. 45 at 1).  By contrast, the Government argues that it may introduce Conklin's out-of-court inculpatory statements as non-hearsay opposing party admissions under Fed. R. Evid. 801(d)(2).  (ECF No. 45 at 1).  Conklin responds that the issue might not be significant, as he intends to testify at his trial.  (ECF No. 49 at 1–2).  Nonetheless, he also argues that should the Government intend to rely on "prior recordings" of his out-of-court statements, under Supreme Court precedent, Rule 804(b)(3) would not allow admission of non-self-inculpatory statements, even if made within a broader narrative that is generally self-inculpatory.  (*Id.* at 1).  Thus, he posits that statements that are not inculpatory regarding the

December 14, 2023 events should be excluded from the Government's case-in-chief—and if non-inculpatory statements are admitted, Conklin intends to invoke the rule of completeness to explain or rebut any misleading impression. (*Id.* at 1–2). A review of the hearsay rule and its exclusions and exceptions provides the contours for these issues.

Hearsay, or an out-of-court statement offered to prove the truth of the matter asserted, *see Smith v. Arizona*, 602 U.S. 779, 785 (2024), is generally not admissible in federal court unless provided for by federal statute, the Federal Rules of Evidence, or other rules prescribed the United States Supreme Court. Fed. R. Evid. 802. The rule against hearsay "is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might by lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener." *Williamson v. United States*, 512 U.S. 594, 598 (1994). Not all statements, however, are hearsay. For instance, an opposing party's out-of-court statement may be offered against that opposing party. Fed. R. Evid. 801(d)(2). For these statements, "the adversarial process allows the party-declarant to rebut his or her own admissions by testifying at trial," *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005), and it does not matter whether the proffered statements are inculpatory or exculpatory, *id.* at 545 n.2. It follows that when a declarant testifies, he may be subject to cross-examination about a prior inconsistent statement. Fed. R. Evid. 801(d)(1). Other statements may fall under hearsay exceptions, including statements against interest. Fed. R. Evid. 804(b)(3); *see Williamson*, 512 U.S. at 598–99 ("Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true."); *see also* Fed. R. Evid. 803.

26

Bearing these principles in mind, Conklin may not introduce "his . . . *own* statements through the testimony of other witnesses" or via recordings through Rule 801(d)(2). *McDaniel*, 398 F.3d at 545. As the Sixth Circuit explained, "if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *Id.*; *see United States v. Ford*, 761 F.3d 641, 651–52 (6th Cir. 2014) ("Precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause."). And the text of Rule 801(d)(2) is clear: the statement must be offered "*against* an opposing party." Fed. R. Evid. 801(d)(2) (emphasis added). If Conklin seeks to introduce any of his own exculpatory statements, "he can testify to them personally." *United States v. Anderson*, 563 F. Supp. 3d 691, 697 (E.D. Mich. 2021). This Government Motion is **GRANTED**.

### F. Government's Motion to Prohibit Evidence and Argument Related to Possible Punishment (ECF No. 45)

The Government also asserts that Defendant Conklin should not be permitted to present evidence or make argument regarding any form of punishment or collateral consequence that he would receive should he be convicted. (ECF No. 45 at 14–15). Defendant Conklin responds that no such instruction is necessary because he "has no intention" of raising the issue at trial. (ECF No. 49 at 11).

The Supreme Court has instructed that "when a jury has no sentencing function, it should be admonished 'to reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). It follows that any mention of the possible punishment or collateral consequences

27

stemming from a conviction should be barred because they would be inappropriate for the jury to consider. *United States v. Georges*, 2021 WL 4191223, at \*6 (S.D. Ohio Sept. 15, 2021) (Marbley, J.); *see generally United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001) (affirming conviction and sentence where district court refused to permit defendant to raise mandatory minimum sentence she would face if convicted); *United States v. Flowers*, 712 F. App'x 492, 501–02 (6th Cir. 2017) (holding district court's limitation on cross-examination, established to prevent the jury from hearing about "potentially increased sentences" that defendants were facing, was not an abuse of discretion). This Government Motion is **GRANTED**.

### G. Government's Motion to Prohibit Evidence and Argument Related to Jury Nullification or State Court Prosecution (ECF No. 45)

Last, the Government asks that Defendant Conklin be prohibited from encouraging jury nullification or otherwise arguing that the case belongs in state court. (ECF No. 45 at 15–17). Defendant Conklin responds that no such instruction is necessary. (ECF No. 49 at 11–12). He argues that he raised the state's decision not to bring misdemeanor charges against him in order to address pre-trial issues regarding the relevance of other evidence, and that it is within the power of the jury to acquit due to a lack of sympathy with the Government's case. (*Id.*).

It does not appear that Conklin intends to raise the issue of the state's aborted prosecution or suggest that this case belongs in state court. Nevertheless, the Court agrees that any reference to the state's prosecution or state court would be unduly prejudicial by the risk that it would confuse or mislead the jury, and therefore Conklin may not make such a reference. Fed. R. Evid. 403.

Next, the Court considers the jury nullification issue. Juries have the power of nullification because they can acquit in defiance of the law. *E.g.*, *Georges*, 2021 WL 4191223, at \*4.

28

Nevertheless, "courts will not encourage [jury nullification], provide jury instructions acknowledging it, or allow lawyers to argue overtly for it." *Wofford v. Woods*, 969 F.3d 685, 709 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1745 (2021); *accord United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988) (affirming district court refusal to discuss jury nullification with the jury, reasoning that a jury nullification instruction would "undermine[] the impartial determination of justice based on law"). Although the prohibition against encouraging or instructing the jury regarding nullification is strongest with respect to the Court, the general proscription against such instruction also impacts counsel, at least when it comes to the bald, explicit, or "express appeals for jurors to disregard the law." *Georges*, 2021 WL 4191223, at *4–5. Such exhortations "are generally forbidden." *Id.* at *5.

Though the jury "is entitled to acquit the defendant because it has no sympathy for the government's position," *United States v. Wilson*, 629 F.2d 439, 443 (6th Cir. 1980), the Court will not allow Conklin to raise express arguments regarding jury nullification at trial. This Government Motion is **GRANTED**. The parties may not reference Conklin's aborted state prosecution or otherwise suggest this case belongs in state court. And Conklin may not make express arguments regarding jury nullification at trial.

### IV.    CONCLUSION

For the foregoing reasons, Defendant Conklin's Motion *in Limine* seeking disclosure of *Brady*, *Giglio*, and Jencks Act material (ECF No. 38) is **DENIED**, in part as moot. Defendant Conklin's Motion *in Limine* seeking to use other acts evidence regarding the victim (ECF No. 39) is **DENIED**. The Government's Motions *in Limine* (ECF No. 45) are **GRANTED in part** and **DENIED in part**. The Government's request to introduce evidence of Conklin's internet search history is partially granted, partially denied, and partially held in abeyance so the Government may

29

lay a foundation for certain searches. The Government's request to introduce evidence of Conklin's other statements made in January and February 2024 is denied at this time.  The Government's request to prohibit any argument regarding jury nullification is granted.  The Government's other requests are granted.

  **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  April 29, 2026**

30